KOWALKE, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*June 2 — June 22, 1899.*

*Mistake of fact: Personal injuries: Pregnancy: Release: Rescission: Compromise: Practice on appeal.*

1. While no accurate and practically applicable definition of a mistake of fact, such as will warrant the rescission of a contract, can be formulated, without immediately surrounding it with numerous exceptions and qualifications more important than itself, it may be defined as an unconscious ignorance or forgetfulness of a fact, past or present, material to the contract. The ignorance must not be a mental state of conscious want of knowledge whether a fact which may or may not exist does so; nor must it be due to negligence. The fact involved in the mistake must have been as to a material part of the contract — an intrinsic fact — and one of the things actually contracted about, and not one which, though connected with the transaction, is merely incidental; and the complaining party must show that his conduct was in reality determined by the mistake. And where parties have entered into a contract based on uncertain or contingent events purposely, as a compromise of doubtful claims arising from them, in the absence of bad faith they must abide the contract.

2. Plaintiff, a married woman, was injured by jumping from defendant's street car, in an emergency, and its liability for her injuries was probable. It appeared, among other things, that she was a woman of intelligence and experience, the mother of three children, and had passed by about a week the proper period of her menstruation. The defendant's surgeon, in company with her own family

physician, visited her after the accident and learned she was having a slight uterine hemorrhage. The question of her pregnancy was raised, and an examination to ascertain that fact proposed and peremptorily refused, she stating she was not in that condition. Thereafter defendant's surgeon negotiated a settlement, under circumstances showing an entire absence of fraud, and she thereupon joined with her husband in executing a full release of all claims and demands, for damages or otherwise, which she then had or could have by reason of jumping from the car. About two weeks thereafter she suffered a miscarriage. *Held,* that the question of plaintiff's condition, whether pregnant or not, was not an intrinsic fact of the subject matter of the contract, but was merely a collateral question, and that the uncertainty as to the fact entered into the compromise and was of the consideration for the release.

3. Pregnancy, if it existed, was no part of the injury, but was one of the surrounding conditions that might or might not increase the effect of the injuries, and the minds of the parties having met upon the understanding of the payment and acceptance of something in full settlement of defendant's liability, in the absence of fraud or unfair conduct, the contract must stand, although subsequent events show that either party made a bad bargain because of a wrong estimate of the damages that would accrue.

4. If the fact of pregnancy were one intrinsic to the contract, the plaintiff, on her attention being called to the subject, having waived any investigation of it, and elected to proceed without inquiry into it, and made a settlement in terms complete, must be presumed to have intended the apparent effect of her acts; and her belief and that of defendant's physician as to the nonexistence of pregnancy was not such a mistake of fact as would justify a rescission of such a deliberately executed contract.

5. Where a trial by jury is waived, except as to the amount of damages, it is proper for the supreme court to apply the law to the facts established in the court below, and to direct the entry of the proper judgment.

Appeal from a judgment of the circuit court for Milwaukee county: D. H. Johnson, Circuit Judge. *Reversed.*

On October 26, 1896, plaintiff was injured by jumping from defendant's street car in an emergency, so as to make its liability for injuries probable. On the day following, the plaintiff's husband applied to defendant for settlement of

Kowalke vs. The Milwaukee Electric Railway & Light Co.

the damage, stating that she was pregnant. Accordingly, the defendant's surgeon secured the attendance of her family physician, who made a cursory examination, which disclosed only slight bruises, and soreness naturally resulting therefrom. They also learned that she was having a slight uterine hemorrhage, and the question of her pregnancy was raised, and an examination to ascertain that fact proposed by defendant's surgeon. She repudiated the fact of pregnancy, stating that she was sure, from certain symptoms, that nothing of the sort existed, and refused peremptorily to submit to examination either by the two physicians or by her own family physician. She stated the result of the transaction on this subject: "When this release was made, I had some bruises and was flowing. I was not positive I was pregnant. I told them I was not in the family way. The doctors asked me how I felt, and went all over the case, and asked me a long time how I felt; and at last it was agreed they were not sure I was in the family way, and they agreed that Dr. Golley should take care of me. The only thing that was known about my condition was that I was flowing, after I had stated to them I was not in family way, and that I had these pains and bruises and stiffness. That was all I knew about it." The defendant's surgeon returned at evening, when the plaintiff's husband was at home, and then a settlement was negotiated, and the plaintiff, with her husband, signed a full release of the defendant " of all claims and demands for damages or otherwise which I now have or can have by reason of jumping from [described car]." Plaintiff's hemorrhage continued intermittently until about the 8th of November, when she suffered a miscarriage. She was treated by Dr. Golley and his assistant throughout, and his bill paid by the defendant. Without prior communication with defendant, the plaintiff on March 4, 1897, commenced this suit, which came to trial May 2, 1898. Plaintiff's counsel, at the opening of the trial, waived all claim for

damages by reason of expense incurred for care, medicine, surgical attendance, nursing, and loss of service, the same being conceded to belong to the husband. The parties stipulated in open court to waive jury trial as to all questions except the amount of damages, and a finding was accordingly made by the court to the effect that at the time of settlement both plaintiff's and defendant's physician believed she was not pregnant and that her injury was slight, that the mutual mistake was made in good faith, and that the settlement was made by reason of said mutual mistake, and without fraud or intentional misrepresentation on the part of either. The jury found the damages at $2,900, and the court set aside and ignored the settlement and release, and entered judgment for that amount, from which this appeal.

For the appellant there was a brief by *Spooner, Rosecrantz & George*, and oral argument by *C. P. Spooner*.

For the respondent there was a brief signed by *Fred S. Fish*, and oral argument by *Mr. Fish* and *Mr. G. W. Hazelton*.

DODGE, J.   The circuit court's finding of entire absence of anything like fraud perpetrated by the defendant or its representative upon the plaintiff is certainly not antagonized by the preponderance of the evidence. Indeed, the conduct of the defendant's physician seems to have been in accordance with the most scrupulous rules of professional and contractual ethics. He refrained from visiting the plaintiff for examination until he had secured, at the company's expense, the attendance of her regular physician. He at no time assumed to treat her, or intrude upon the relations between her and her attending physician. He refrained from any negotiation for settlement until he could meet her in company with her husband. The judgment, however, proceeds exclusively upon what is termed by the court below "a mistake of fact," which is predicated upon the fourth finding, that both she and the defendant's physician "believed" she was not pregnant.

To formulate an accurate and practically applicable definition of the mistake of fact which will warrant rescission of a contract has been apparently well-nigh the despair of law writers. Indeed, no definition or general rule has been invented which is sufficient or accurate, except by immediately surrounding it with numerous exceptions and qualifications more important than itself. This is not surprising, in view of the fact that the whole doctrine is an invasion or restriction upon that most fundamental rule of the law, that contracts which parties see fit to make shall be enforced, and in view of the further consideration that one or both of the parties is often, if not usually, ignorant or forgetful of some facts, thoughtfulness of which might vary his conduct.

The most philosophical definition we have found is that presented by Pomeroy (Eq. Jur. § 839): "*An unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract.*" This definition contains several elements, each of which, as above suggested, must be explained and qualified in its practical application. Thus, the ignorance must be unconscious; that is, not a mental state of conscious want of knowledge whether a fact which may or may not exist does so. Kerr, Fraud & M. 432. This idea is involved in, and furnishes a reason for, the exception pointed out by DIXON, C. J., in *Hurd v. Hall*, 12 Wis. 112, 127, on authority of *Kelly v. Solari*, 9 Mees. & W. 54, viz.: Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. These limitations are predicated upon common experience, that, if people contract under such circumstances, they usually intend to abide the resolution either way of the known uncertainty, and have insisted on and received consideration for taking that chance.

Akin to the rule that the ignorance must be unconscious, though going still further as an exception, is the other rule,

Kowalke vs. The Milwaukee Electric Railway & Light Co.

that ignorance must not be due to negligence, although there be no actual suspicion with reference to the fact in question. Pomeroy, Eq. Jur. § 856; Kerr, Fraud & M. 406; *Hurd v. Hall,* 12 Wis. 126; *Conner v. Welch,* 51 Wis. 431. The last case is a good illustration. A mortgagee took a new mortgage, and released an old one, on the understanding that his new lien took the place of the old, in ignorance of existence of a subsequent judgment against the mortgagor. The court held that, because he had some knowledge of the latter's embarrassed condition, it was negligence not to have investigated as to judgments, and refused, notwithstanding the mistake, to rescind the transaction and reinstate his former lien.

Passing the requirement that the fact as to which mistake is made must be either past or present,— for it is obvious that the coming into existence of any future fact must at the time of contracting have been understood to rest in conjecture, and the contingency thereof to have been assumed by both parties,— another essential element of the definition is that the fact involved in the mistake must have been as to a material part of the contract, or, as better expressed by Mr. Beach (Mod. Eq. Jur. §§ 52, 53), an intrinsic fact; that is, not merely material in the sense that it might have had weight if known, but that its existence or nonexistence was intrinsic to the transaction,— one of the things actually contracted about. As, in the familiar illustration of the sale of a horse, the existence of the horse is an intrinsic fact. Another partial expression of this requisite, adopted by Mr. Pomeroy (Eq. Jur. § 856), is as follows: "If a mistake is made as to some fact which, though connected with the transaction, is merely incidental, and not a part of the very subject matter or essential to any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, in either case the mistake will not be ground for relief, affirmative or defensive." The last

part of this statement is adopted in *Klauber v. Wright,* 52 Wis. 303, 308; *Grymes v. Sanders,* 93 U. S. 55, 60.

Some illustrative cases of this aspect of the subject may serve to elucidate. The damaged condition of a ship at sea, as to which both parties to her sale are ignorant, held merely a collateral circumstance, and not an intrinsic fact. *Barr v. Gibson,* 3 Mees. & W. 390. Financial condition of a debtor is not intrinsic to a compromise and release of his debt, so that mistake thereon will justify rescission. *Dambmann v. Schulting,* 75 N. Y. 55, 63. Ignorance of declaration of peace, greatly enhancing value of merchandise, will not justify rescission of sale. *Laidlaw v. Organ,* 2 Wheat. 178. Sufficiency of security for a debt purchased as part of firm assets, not intrinsic. *Segur v. Tingley,* 11 Conn. 134, 143. Certain United States bonds had been extended, and, as a result, were commanding premium in market. Held not "of the essence" of a sale at par, both parties being ignorant as to both extension and premium. *Sankey's Ex'rs v. First Nat. Bank,* 78 Pa. St. 48, 55. One who had built a mill partly on land of another purchased of that other two lots, both parties supposing them to include the mill, which, however, was found to be on a third lot. Court refused to rectify, holding that the contract related to purchase and sale of the lots named, and that, though presence of mill on one of them might have been an important consideration, it was not the fact as to which they contracted, not intrinsic to the transaction. *Webster v. Stark,* 78 Tenn. 406. Fact that a specific tract of land contains less than supposed, not affecting identity of thing purchased, is not "of the very subject matter of the sale." *Thompson v. Jackson,* 3 Rand. (Va.), 507.

The foregoing is the principle on which is founded the rule well stated by Mr. Kerr (Fraud & M. 433), as follows: "Care must be taken in distinguishing cases where the parties are under a mutual mistake as to the subject matter of a contract from cases where there is no doubt as to the sub-

ject matter, but the one has in fact sold more than he thought he was selling, and the other got more than he expected,"— illustrating by sale of a leasehold having longer to run than supposed. *Okill v. Whittaker*, 1 De Gex & S. 83.

A further limitation upon the maxim, *Ignorantia facti excusat*, especially applicable to cases like the present, is that, where parties have entered into contract based upon uncertain or contingent events, purposely, as a compromise of doubtful claims arising from them, in absence of any bad faith, no rescission can be had, though the facts turn out very differently from the expectation of either or both of the parties. In such classes of agreements the parties are presumed to calculate the chances, receive compensation therefor, and assume the risks. Pomeroy, Eq. Jur. § 855; Beach, Mod. Eq. Jur. §§ 43, 56; *Continental Nat. Bank v. McGeoch*, 92 Wis. 286, 313. It is too obvious to require more than statement that, if parties fairly agree to abide uncertainty as to past or as to future events, they must do so. *Kercheval v. Doty*, 31 Wis. 476.

Applying the definitions and rules of law above set forth, with their qualifications, to the facts of this case, it is clearly apparent that if there was a mistake, in the sense in which that word is used in the law, the fact as to which such mistake existed was not an intrinsic one,— it was not of the subject matter of the contract. There was no mistake or misunderstanding as to the acts of the defendant, nor as to the injuries which the plaintiff had received. The effect of those injuries was, of course, problematical and conjectural. That very uncertainty entered into the compromise made, and was the consideration of a certain sum on one side, and the surrender of any larger sum on the other. The elements of the contract of settlement were: first, whether defendant was liable; and, secondly, what amount, in view of all the contingencies, should be paid and received in satisfaction of such liability, and the question of the plaintiff's

condition, whether pregnant or not, was merely a collateral question. It was no part of the injury caused by defendant, nor anything for which damages should be paid. At most, it was but one of the surrounding conditions which might or might not increase the effect of the injuries. It is probably true, in the great majority of personal injury cases, that the effect which the injuries received may have, as to time of disability, *quantum* of suffering, and the like, may be modified by the physical or mental condition of the injured party. For example, a predisposition to rheumatism would be a condition likely to enhance the subsequent effects of an injury,— especially a dislocation or other injury to a joint. A disturbed condition of the system might prevent the reuniting of a broken bone, otherwise practically certain. A predisposition to nervous troubles might vastly multiply the effects of a slight spinal injury. So that if the mere ignorance of such surrounding conditions can suffice to render ineffective a settlement, because after events indicate that the amount paid is inadequate, few compromises of the damages from personal injury could be relied on. Compromise is highly favored by the law, and any rule or doctrine by which the fair meeting of the minds of the parties to that end, in the great majority of cases which arise in human affairs, must fail to be permanent or effectual to settle their rights, is contrary to the whole spirit of the law, and should not be adopted. The question in each such case is, Did the minds of the parties meet upon the understanding of the payment and acceptance of something in full settlement of defendant's liability? If they did, without fraud or unfair conduct on either side, the contract must stand, although subsequent events may show that either party made a bad bargain, because of a wrong estimate of the damages which would accrue. *Seeley v. Citizens' T. Co.* 179 Pa. St. 334, 338; *Homuth v. Metropolitan St. R. Co.* 129 Mo. 629; *Klauber v. Wright,* 52 Wis. 303, 314.

In the case at bar there can be no question but that the agreement reached was for full settlement of all defendant's liability for damages resulting from the accident. The written agreement unambiguously asserts such intention, and there is no claim that plaintiff did not so understand it. She might well enter on such compromise, for every advantage of knowledge as to the injuries received, and as to their probable effect, was with her. She had the benefit of her own observation, and the counsel of her customary physician, while defendant had but the opportunity of observing a single brief examination of her person, and that much less complete than was requested, in which its physician was necessarily subject to be deceived by simulated symptoms or exaggerated statements. In addition to all which, the settlement cast upon the plaintiff a share of the contingencies of an underestimate of damages, while she assumed none in case an overestimate had been made. All charges for medical attendance by reason of her injuries were assumed by defendant, and it might with some reason claim that it should not pay those due to the miscarriage, since plaintiff gave the most vehement assurances against any such event. But both parties have treated this obligation as one to be performed by defendant, notwithstanding the unexpected enhancement thereof. On the other hand, no promptitude of recovery or overestimate of the injury was, by the agreement, to cause a return of any of the consideration paid.

It may be noted here that plaintiff nowhere suggests that she would not have made this settlement, had she been aware of her pregnancy; and, under this branch of the law of mistake, it is laid down that it must clearly appear that the contract would not have been made, had the fact been known. This is a material consideration. Enhancement of her damage was by no means certain to result from the fact of pregnancy. Indeed, the only evidence on the subject was against the probability of any such effect. We cannot say that she

would not have been willing to accept this settlement, and assume the contingency, even had she known the fact of her condition. And, even if the fact were one intrinsic to the transaction, still it is essential to the extreme remedy of rescission of a deliberate contract that plaintiff prove clearly that she would not have executed, had she known the truth. *Klauber v. Wright*, 52 Wis. 303; *Grymes v. Sanders*, 93 U. S. 55.

If, however, the fact of pregnancy had been one intrinsic to the contract, the question remains whether such mistake was made with reference thereto as avoids that contract. The court below finds that a mistake existed as to that fact. So far as this is a finding of fact, we shall accept it as conclusive in the light of the evidence; but whether it is such a mistake as justifies rescission of a deliberately executed agreement is a question of law, and present before us for decision. We have already pointed out the distinction between the " unconscious ignorance " required to accomplish this result, and the mental state of consciousness of ignorance whether the fact exists or not,— where, as Dixon, C. J., phrases it, her attention being called to the subject, she waived any investigation of it, and elected to proceed without inquiry into it. It seems clear that the plaintiff was — indeed, that both parties were — in the latter mental condition. The plaintiff had passed, by about a week, the proper period of her menstruation. She was a woman of intelligence and experience, already the mother of three children. She necessarily knew that the question of her condition was one of uncertainty. Her conclusion thereon, however firm, was necessarily but a *conclusion* from various facts, circumstances, and symptoms, some of which, at least, suggested existence, instead of nonexistence, of the suspected state. It was but a balancing of probabilities. The finding, indeed, is that the parties *believed*, not that they were ignorant; and plaintiff's own testimony makes it apparent that the situation was little more than a state of doubt, with

Kowalke vs. The Milwaukee Electric Railway & Light Co.

a belief that the probability was negative. She says: "I had bruises and was flowing. I was not positive I was pregnant. I told them I was not. The doctors went all over the case, and made inquiries, and at last it was agreed, they were not sure I was in the family way, and they agreed that Dr. Golley should take care of me." In a case of doubt like this, if the doubtful fact is material, parties may compromise and include the uncertainty among those covered by the settlement; they may refuse to settle until the uncertainty is removed, or they may settle everything else, and expressly omit therefrom the specified contingency. If they go on and make settlement in terms complete, they will be presumed to have intended the apparent effect of their acts. Any other presumption would be contrary to the truth, in the great majority of instances, and defeat the real intention of the parties, and we have no doubt it would do so here. It seems to us that both parties had in mind the possibility of pregnancy, and yet that both intended what they said by their written agreement, namely, to pay and accept in compromise and discharge of all defendant's liability a present sum of money and payment for any medical attendance rendered necessary by the injuries. The defendant has performed that agreement on its part, and plaintiff must be held to abide it on hers.

Trial by jury having been waived, except as to amount of damages, it is proper for this court to apply the law to the facts established in the court below. Those facts are that plaintiff, understandingly and without fraud, executed the release set forth, and that no such mistake of fact as warrants rescission of that contract appears. As a result, judgment should have gone for the defendant.

*By the Court.*— The judgment is reversed, and the cause remanded to the circuit court with directions to enter judgment for defendant.