## CHATTANOOGA RY. & LIGHT CO. *v.* GLAZE.

### (*Nashville.* December Term, 1921.)

1. **RELEASE.** To void release, misrepresentation must be as to material fact.

A misrepresentation, to be sufficient to avoid a contract of settlement, must be as to the material facts, unless the relation of the parties is such as to render applicable exceptions to the rule, such as a fiduciary relation existing between the parties. (*Post*, p. 58.)

2. **RELEASE.** Evidence insufficient to show release procured by fraud.

In an action for personal injuries, in which defendant set up a contract of settlement, evidence *held* insufficient to show that the settlement and release were procured by defendant's fraud. (*Post*, p. 58.)

3. **RELEASE.** $150 for release of liability for injury not grossly inadequate.

Where a passenger on a street car was struck by the conductor with an iron rod, which injury required confinement in the hospital for three days, a settlement on the fifth day while the passenger was engaged in his usual work of driving a truck, for $150, cannot be said to be grossly inadequate. (*Post*, pp. 59-64.)

Cases cited and approved: Byers v. Railroad Co, 94 Tenn., 345; Hayes v. Railway Co., 89 Ga., 264; Kane v. Chester Traction Co., 186 Pa., 145; Railway Co. v. McCarty, 94 Tex., 298; Kowalke v. Milwaukee Elec. Ry. & Light Co., 103 Wis., 472; Quebec v. Railway Co. 98 Tex., 6; Railway Co. v. Armstrong, 115 Ark., 123; Homuth v. Railroad Co., 129 Mo., 629.

Cases cited and distinguished: Byers v. Railroad, 94 Tenn., 345; Brundige v. Railroad, 112 Tenn., 530; Russell v. Dayton Coal & Iron Co., 109 Tenn., 43; L. & N. R. R. Co. v. Toombs, 6 Tenn. Civ. App., 617.

146 Tenn.—4

FROM HAMILTON.

Appeal from the Circuit Court of Hamilton County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. OSCAR YARNELL, Judge.

BROWN, SPURLOCK & BROWN, for plaintiff in error.

MURRAY, COUNTS & EMERSON and J. W. PEAK, for defendant in error.

MR. JUSTICE HALL delivered the opinion of the Court.

This action was brought by the defendant in error, Carter C. Glaze, against the Chattanooga Railway & Light Company to recover damages for personal injuries.

The declaration averred that the defendant in error, on the 2d day of February, 1919, was a passenger on one of the cars of the plaintiff in error, and, while such passenger, the conductor in charge of said car unlawfully and maliciously assaulted him with an iron rod, which he carried in his hand, hitting him on the head with said instrument, lacerating and bruising his head, fracturing his skull, causing him to suffer great physical pain and mental anguish and permanently injuring him.

Subsequently the declaration was amended. In this amendment substantially the same grounds for a recovery were averred with the additional averment that the plaintiff in error, after being informed of the wrongful act of the conductor, approved and ratified it by retaining the conductor in its employ.

To the declaration the plaintiff in error filed two pleas: First, a plea of not guilty; and, second, a plea of accord and satisfaction.

The plaintiff in error, in its plea of accord and satisfaction, averred that on February 7, 1919, it paid the defendant in error the sum of $150 in full settlement and discharge of the injury sustained by him as the result of the alleged wrongful act of its conductor set forth in the defendant in error's declaration, and that defendant in error, in consideration of the payment of said sum, executed a release in writing, discharging the plaintiff in error of all liability on account of said injury, which release is in words and figures as follows:

Chattanooga Railway & Light Company.

"Whereas Carter C. Glaze, of the county of Hamilton, State of Tennessee, claims damages for injuries received when struck with door handle by conductor on the 2d day of February, 1919, by the Chattanooga Railway & Light Company at or near East End avenue on the East Chattanooga Line, under circumstances which he claims renders the said Chattanooga Railway & Light Company liable in damages; and whereas, the said Chattanooga Railway & Light Company, on the other hand, deny any liability; and, whereas, both parties desire to compromise, adjust and settle the matter: Now, therefore, in consideration of the sum of one hundred and fifty dollars ($150) to me in hand paid by the said Chattanooga Railway & Light Company, I do hereby compromise said claim, and release said Chattanooga Railway & Light Company, its agents and employees, from any and all liability for the above-mentioned cause, and acknowledge full satisfaction and discharge of all liability of the said Chattanooga Railway & Light Com-

pany, its agents and employees, from any and all liability for the above-mentioned cause, and acknowledge full satisfaction and discharge of all liability of the said Chattanooga Railway & Light Company, its officers and agents, by reason of said injuries that have or may hereafter accrue.

"Witness my hand at Chattanooga, Tennessee, this 7th day of February, 1919.

"CARTER C. GLAZE."

"Witness: F. M. WELLS."

This plea of accord and satisfaction was filed on July 25, 1919.

On May 4, 1920, defendant in error filed three replications to said plea. The plaintiff in error moved to strike these replications, which motion was sustained by the court. On July 24, 1920, leave of the court being first had and obtained, defendant in error filed an amended replication, in which he made the following material averments:

(1) That the compromise or settlement relied on by plaintiff in error and set out in the written release was procured by gross fraud and misrepresentation, while defendant in error was suffering great physical pain and mental anguish from the effects of the injury received, which rendered him mentally incapable of making the contract, or to protect his interest and pass upon his rights.

(2) That plaintiff in error fraudulently selected one Frank Wells, who was an old friend and acquaintance of defendant in error, in whom he had great confidence, and arranged with the said Wells to procure said compromise and settlement with defendant in error.

(3) That plaintiff in error represented to defendant in error, through said Wells, that its said servant who wrong-

fully and unlawfully assaulted defendant in error had done so in utter disregard and in violation of the rules of the company, and that said servant had been or would be discharged and prosecuted by plaintiff in error for the assault upon him, and that plaintiff in error greatly regretted the assault, and was not legally responsible therefor.

(4) That defendant in error had no right of action against plaintiff in error, but that plaintiff in error regretted the assault, and proposed to make defendant in error a donation of $150.00 to aid him in his distressed condition, which amount was accepted by defendant in error as such donation, and he signed the paper thinking that he was acknowledging the receipt of the gift, and was not making a settlement of any right of action which he had against the plaintiff in error.

(5) That plaintiff in error knew that defendant in error had a right of action against it for many thousand dollars, and knew it did not intend to discharge or prosecute its servant for the assault, and, in fact, ratified and approved the assault upon defendant in error by retaining said servant in its employ; and that the amount paid by plaintiff in error to defendant in error in settlement of said alleged wrongs and injury was so grossly inadequate as to shock the conscience of the court, and did not rise to the dignity of a settlement.

Defendant in error tendered with his replication and paid into court said $150, together with interest thereon from the date the same was paid by the plaintiff in error.

A trial of the case upon these pleadings before the court and a jury resulted in verdict and judgment in favor of the defendant in error for the sum of $1,000, from which

plaintiff in error appealed to the court of civil appeals, after its motion for a new trial had been overruled. That court affirmed the judgment of the circuit court, and the case is now before this court upon plaintiff in error's petition for writ of *certiorari* and for review.

By its assignments of error in this court plaintiff in error insists:

(1) That there is no evidence to support the verdict of the jury.

(2) That the court of civil appeals erred in not sustaining defendant in error's motion for a directed verdict.

(3) That on the undisputed evidence defendant in error was bound, as a matter of law, by the release and discharge which he admitted he executed to the plaintiff in error, and that there was no issue of fact with respect of said lease to be submitted to the jury.

(4) That there was no evidence to support the verdict of the jury disregarding said release, and the same should have been sustained.

It is conceded in this court that there was evidence to support the finding of the jury that the injury inflicted upon defendant in error by the plaintiff in error's servant was wrongful and without legal justification, though there was a sharp issue in the trial court as to whether or not the plaintiff in error's servant, in inflicting the injury upon defendant in error, acted in his own necessary self-defense. Therefore it is unnecessary to discuss that phase of the case in this opinion. All of plaintiff in error's assignments go to the sufficiency and binding effect of the plea of accord and satisfaction.

The defendant in error's injury consisted of what the physicians describe as a depressed fracture of the skull on

the left side of his head. He was not rendered unconscious by the injury, and was carried to a hospital immediately after it was inflicted. There the injury was dressed by the physician in charge. Defendant in error remained in the hospital for three days, after which he returned to his work, which was that of a delivery man for the Erskine Bakery. Defendant in error not being able to perform his duties as deliveryman unassisted, a helper was put on the wagon with him. Defendant in error drove the wagon, and showed his helper where to deliver the goods. This continued for two or three weeks, after which defendant in error resumed his work in the regular and usual way unaided. It does not appear that he ever lost any wages on account of his injury, and he admitted on the trial that he was then receiving larger wages from his employer than he did before he sustained his injury. On the trial he said his head hurt him at times, and had done so since receiving the injury complained of; that he had a pain over his left eye and could not see to read with that eye like he could before he was injured.

On January 21, 1921, after the present action was instituted, defendant in error had his injury X-rayed by Dr. Cheney, and was also treated by Dr. McQuillan. Dr. McQuillan testified that there is a scar on the left side of defendant in error's head about two and one-half inches long, and that there was a depression on the brain, one side higher than the other, and is tender on pressure; that defendant in error was suffering from a cerebral or brain irritation, and had exaggerated reflexes and a temperature of 99.2. When asked what sort of an injury defendant in error had, Dr. McQuillan testified:

"There is of course the physical consequences; there is this brain irritation and these exaggerated reflexes, and he has a certain amount of headaches and inability to exert himself, and he is what we call physically inefficient; he is not able physically to carry on his work; if there is any amount of strain about his work or any stooping over or bending it affects him."

He was asked the following question: "What might result from that, Doctor? A. Well, the result might be that he might develop violent convulsions; as a matter of fact, where there is a fracture of the skull, if the patient exerts himself too much, it might bring on convulsions or it might cause death."

Dr. Cheney, who made the examination in January, 1920, says that the X-ray showed a depressed fracture. On being asked what were the future probabilities of said injury, he said: "It may give trouble, and it may not." On cross-examination he was asked if the injury were serious. He replied that such injuries were not always serious. He was then asked: "You did not regard this as serious, did you?" He answered:

"Well, I don't know that it would be serious.

"Q. You won't state that he will have any future trouble? A. I cannot say that he will have any future trouble.

"Q. You or no other doctor could state whether he would have any future trouble? A. No, sir.

"Q. From this matter? A. No, sir."

The defendant in error first says in his replication that the settlement relied on by plaintiff in error was procured by gross fraud and misrepresentation while he was still suffering great physical pain and mental anguish

from the effects of the injury, which rendered him mentally incapable of making a contract and protecting his rights.

The settlement was made on February 7, 1919, which was five days after the injury was inflicted. It was made after Mr. Wells, the claim agent of plaintiff in error, had had three interviews with defendant in error. It was made after defendant in error had returned to his work, and he was on his wagon at the time the settlement was made. It was made after defendant in error had been treated by Dr. Ellis at the hospital, a physician of his own selection, and after advising with his employer, Mr. Erskine, and another friend, John Edmondson. The release which he executed was plainly written, and was couched in plain and unambiguous language. He signed said release after reading the same according to the testimony of Mr. Wells, the claim agent for plaintiff in error, and this is not denied by defendant in error. It is not claimed by defendant in error that he did not comprehend the terms of the contract. He was asked on cross-examination if he knew he was settling his claim for $150. He answered: "Yes; I realized that." He also admitted that he made the settlement after advising with Mr. Erskine, his employer, and John Edmondson, who was a friend of his. He admitted that he knew that Mr. Wells was, at the time he made said settlement, in the employ of the plaintiff in error as its claim agent. It was shown by the testimony of Wells, and not denied by defendant in error, that he had only been acquainted with defendant in error some six or eight months, which acquaintance arose out of the fact that they had previously boarded together at a private boarding house in Chattanooga. No evidence was offered by defendant in error which tended to show that Wells

represented to him that the servant who assaulted him had done so in utter disregard and in violation of the rules of plaintiff in error. Nor was there any evidence offered tending to show that Wells represented to defendant in error that said servant had been or would be discharged, or that he would be prosecuted for the assault made upon defendant in error. No evidence was offered tending to show that Wells represented to defendant in error that plaintiff in error regretted the assault. Wells did state to defendant in error that he had no right of action against plaintiff in error. This had been the insistence of the plaintiff in error all the time, and was its insistence upon the trial of the case in the trial court and in the court of civil appeals. This was merely the expression of an opinion by Wells.

A misrepresentation, in order to be sufficient to avoid a contract of settlement, must be as to material facts rather than mere matters of opinion, unless the relation of the parties is such as to render applicable certain well-recognized exceptions to the rule, such as where there is a fiduciary relation existing between the parties. No such relation existed in the instant case. It is not contended that Wells, in making the representation to defendant in error that he had no right of action against plaintiff in error, misrepresented any fact concerning the matter out of which defendant in error's injury grew whatsoever. The facts and circumstances under which the injury was inflicted were well known to defendant in error. We are of opinion, therefore, that the claim of defendant in error that the settlement and release were procured and accomplished by fraud on the part of plaintiff in error is not supported by any evidence.

The remaining question is whether or not the amount which was paid defendant in error as compensation for his injury under the contract of settlement was so grossly inadequate as to shock the conscience of the court, and did not rise to the dignity of a settlement?

In support of defendant in error's contention that such was the effect of the contract entered into by him with plaintiff in error, three cases are cited. First, the case of *Byers* v. *Railroad,* 94 Tenn., 345, 29 S. W., 128. That case involved two suits for personal injuries resulting in the death of William Aliston and his son, Charles Aliston. There was a verdict by the jury in each case, and judgment was rendered against the railroad company for $12,000 damages for the killing of the father, and $5,000 damages for the killing of the son. It appeared that Mrs. Byers, the wife and mother, respectively, of the two persons killed soon after the accident signed a paper releasing all claims for damages against the company upon the condition that the company give her a ticket from Chattanooga to Knoxville, the usual cost of which was $3.25, and pay her the further sum of $70 in money, all of which was done. In the subsequent suits brought to recover for the death of the father and son the railroad company pleaded the said settlement as an accord and satisfaction in bar to the plaintiff's right to recover. In disposing of this defense the court said:

"Compromises made in good faith of doubtful claims, by parties dealing with each other on equal terms, and with opportunities to know their rights, will be sustained by the courts.

"Without entering into detail, we think the arrangement in this case did not rise to the dignity and impor-

tance of a compromise, and that the company did not so regard it, but looked upon the amount paid more in the light of a contribution for charitable purposes to a woman in dire distress than otherwise. The wife had just lost her husband and son, her only hope of support and had given away her daughter from necessity. She did not know her rights, evidently was illiterate, and, whether misled or not, she was surrounded by such circumstances, affliction, and distress as made her incompetent to pass upon and surrender her legal rights, if she had a meritorious cause of action, and we would not allow such an arrangement to prevent her recovery if entitled to it."

It will be noted that that was a case where an illiterate woman, in ignorance of her rights, and in a state of extreme distress and destitution, in consideration of a railroad ticket worth $3.25 and $70 in money, released a meritorious claim for damages worth several thousand dollars against the railroad company for the killing of her son and husband, her only means of support, which sum was a mere trifle compared to that which she was entitled to recover upon the facts of the case.

This court, in the case of *Brundige* v. *Railroad*, 112 Tenn., 530, 81 S. W., 1249, speaking with reference to the Byers Case, said:

"This court, in the case of *Byers* v. *Railroad Co.*, 94 Tenn., 345, 29 S. W., 128, set aside an accord and satisfaction, or compromise agreement in an action at law, because of fraud and unconscionable advantage."

The second case relied on by defendant in error is *Russell* v. *Dayton Coal & Iron Co.*, 109 Tenn., 43, 70 S. W., 1. That was a suit brought in the chancery court to set aside a compromise settlement made by the administrator of the

Chattanooga Ry. & Light Co. v. Glaze.

deceased for the sum of $125 of a right of action for the negligent killing of a minor between forty and forty-five years of age in good health, and a strong hard-working man. The administrator was ignorant and inexperienced, and was without knowledge of the rights of his intestate in the case involved. His counsel was young and inexperienced. This court, in passing upon the effect of the compromise and settlement, said:

"Upon the whole case, which has been so thoroughly considered by the court of chancery appeals, and so fully set out in its opinion, we are content to affirm the holding of that court that there is ground of liability, and complainants have a meritorious case; that the compromise amount was wholly inadequate, and the compromise should be set aside."

It will be noted that the shocking inadequacy of the consideration paid for the release executed in that case, together with the ignorance and inexperience of the administrator, his lack of knowledge of the rights of his intestate, and his reliance upon an attorney who was young and inexperienced, was held sufficient to avoid the contract.

The third case relied on is *L. & N. Railroad Co.* v. *Toombs,* reported in 6 Tenn. Civ. App., 617. The facts in that case are set out in the opinion as follows:

"Briefly, in so far as we are now dealing with the accord and satisfaction, there is evidence tending to show that very soon after the husband was killed an agent of the railway company visited Mrs. Toombs and represented to her that the railroad was not liable; that the employees did everything they could to prevent the accident, that the whistle was blown, and that there was no liability upon the part of the railroad whatever; that the railroad was

willing to make her a present of $150, and that he would
add $50 himself. The testimony tends to show that he re-
iterated his assertion of nonliability and appealed to her
sense of fairness. It is shown that she was then ill and
had not recovered from the shock of her husband's death
and relied implicitly upon the representations of the agent.
There is proof tending to show that one or two material
statements of the agent were untrue. These and other at-
tendant circumstances were sufficient to take the case to
the jury."

In that case it appeared that Mrs. Toombs was not fa-
miliar with the facts and circumstances attending her
husband's killing by the railroad company. She relied
upon the statements of the railroad company's agent to
the effect that the railroad company did everything it
could do to prevent the accident, that the whistle was
blown, and that there was no liability upon the part of the
railroad company whatsoever. These statements by the
railroad company's agent were untrue, and, relying upon
them, Mrs. Toombs, the plaintiff, was misled to her preju-
dice.

As before stated, there is no evidence in the instant case
tending to show any fraud upon the part of the plaintiff
in error. There was no misrepresentation of any material
fact made by Mr. Wells, the claim agent, which induced
the defendant in error to make the settlement. He made
the settlement with full knowledge of all the facts and
circumstances attending his injury. He was first offered
$75 by the claim agent in settlement of his claim against
the plaintiff in error, which offer he refused. Later he
was offered $100. This offer was likewise refused, and
was finally offered $150, which sum he accepted, after ad-

vising with his employer, Mr. Erskine, and his friend, John Edmondson. He admitted on cross-examination that he knew when he accepted the $150 he was settling his claim against the plaintiff in error. It may be true that the amount received was inadequate for the injury, but it cannot be said that it was so grossly inadequate as to shock the conscience of the court, and did not rise to the dignity of a settlement. The defendant in error was at that time on his wagon apparently going about his usual duties. He was only confined to the hospital three days, and, so far as the evidence shows, never lost any portion of his wages on account of said injury. It is evident that the $150 was regarded by both defendant in error and plaintiff in error as fair compensation for the injuries sustained at that time.

"The compromise and release of doubtful claims for personal injury is highly favored by the law, and any contract by which there is a fair meeting of the minds of the parties to that end must be adopted by the courts. If there was a meeting of the minds of the parties, without fraud or unfair conduct on either side, the contract must stand, although subsequent events may show that either party made a bad bargain, because of a wrong estimate of the damages which would accrue. Such compromise cannot be avoided for a mistake of fact, nor can the releasor avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents, but relied on what another said about it." R. C. L., vol. 23, section 16, p. 385; 24 Am. & Eng. Ency. of Law (2 Ed.), p. 314; 34 Cyc., 1058; *Hayes* v. *Railway Co.,* 89 Ga., 264, 15 S. E., 361; *Kane* v. *Chester Traction Co.,* 186 Pa., 145, 40 Atl., 320, 65 Am. St. Rep., 846; *Railway Co.* v. *McCarty,*

94 Tex., 298, 60 S. W., 429, 53 L. R. A., 507, 86 Am. St. Rep., 854; *Kowalke* v. *Milwaukee Electric Railway & Light Co.,* 103 Wis., 472, 79 N. W., 762, 74 Am. St. Rep., 877; *Quebe* v. *Railway Co.,* 98 Tex., 6, 81 S. W., 20, 66 L. R. A., 734, 4 Ann. Cas., 545; *Railway Co.* v. *Armstrong,* 115 Ark., 123, 171 S. W., 123; *Homuth* v. *Railroad Co.,* 129 Mo., 629, 31 S. W., 903.

It results, therefore, that we are of the opinion that the contract of settlement was binding on the defendant in error, and that there was no legal grounds for setting aside said settlement, and that the plaintiff in error was entitled to a directed verdict upon the undisputed facts of the case.

It results, therefore, that the judgment of the court of civil appeals and of the circuit court will be reversed, and defendant in error's suit will be dismissed, with costs.