Wisch, Appellant, v. Central Life Assurance Company, Respondent.

*November 29, 1963—January 3, 1964.*

230

For the appellant there was a brief by *Garrigan, Keithley, O'Neal, Dobson & Elliott* and *Roger D. O'Neal,* all of Beloit, and oral argument by *Roger D. O'Neal.*

For the respondent there was a brief by *Ela, Christianson, Ela, Esch, Hart & Clark,* and *Walter P. Ela* and *William F. Nelson,* all of Madison, and oral argument by *Mr. Nelson.*

FAIRCHILD, J. At the time Mr. Wisch gave the releases to defendant, he was totally disabled and may well have thought that he would remain so for the rest of his life. Although we now know that he had less than two months to live, the doctors were uncertain at that time of the nature of his illness. It was possible that he might live a long time, though disabled.

Defendant had issued three policies on Wisch's life. He had purchased one policy on the life of his son, not directly involved in this action.

One policy on Wisch's life had not been in force for a full two years. Defendant claimed that it had been induced to issue the policy by material false representations, and that it was entitled to cancellation upon refund of the premiums paid, with interest. Wisch accepted such refund ($368.35) and surrendered the policy. The circuit court found that Wisch had signed an application in which he did not state he had suffered for several years from rheumatoid arthritis; and that defendant relied on the application. In view of the fact that Wisch had surrendered the policy in return for the refund, it was unnecessary for the court to determine the defendant's claim of its right to cancellation upon the merits, but it is clear that defendant had at least a debatable and plausible claim to that effect which it asserted in good faith.

Two policies on Wisch's life had been in force for more than two years. Defendant concedes that it had no right to

cancel these policies for fraud. The difference of opinion as to these policies concerned a provision whereby the defendant must waive premiums during a period of total disability of the insured unless (among other things) the disability resulted from disease occurring before the policy took effect, known to the insured and not disclosed in the application. Wisch had applied for waiver of premium; the defendant conceded his total disability, but refused to waive premiums because it claimed the disability resulted from the rheumatoid arthritis from which he had suffered for years before applying for the policies and which was not disclosed in his applications. Here again it is clear that defendant had at least a debatable and plausible claim which it asserted in good faith.

Thus the situation at the time of release was as follows: The two incontestable policies had a combined principal amount of $15,000. They appear to have had a combined cash value somewhat less than $544.25. That amount would appear to be the cash value after the payment of premiums for the third full year. The total annual premiums were $465.25. As a result of the release transaction, Wisch gave up the right to maintain the policies in force, relieved himself of the burden of doing so, and received $2,064.53, the amount of the premiums he had paid, plus interest, plus $634.90.

With the advantage of hindsight we know that the bargain as to the two incontestable policies turned out badly for Mr. Wisch's family. Had he paid whatever monthly instalments were required to keep the policies in force until his death, about fifty days after the release transaction, his widow would have received $15,000. Wisch was, however, thirty-five years of age, and viewing the situation at the time of the release, it might have required the payment of

a great many annual premiums to keep the policies in force until his death.

At the outset, plaintiff concedes that upon appeal the findings of the trial court must be sustained unless contrary to the great weight and clear preponderance of the evidence; and that in order to establish fraud plaintiff must prove her case by clear and satisfactory evidence.

Plaintiff asserts that defendant had no legal right to surrender of the two incontestable policies. This is conceded, but does not exclude the proposition that Mr. Wisch might advisedly decide to surrender them for a present consideration rather than shoulder the burden of paying premiums without earnings over what might prove to be a long period of time.

Plaintiff contends that defendant's denial of liability on the contestable policy was debatable under the law. This may perhaps be true, but its denial was on plausible grounds, apparently asserted in good faith. In response, Wisch surrendered the policy and accepted the refund of premiums.

Plaintiff's principal attacks on the findings of the circuit court are (1) that defendant's representative in the negotiations, a Mr. Berner, had a duty to disclose to Wisch the incontestable status of the two older policies, but failed to do so, and (2) that the releases were negotiated under a mutual mistake of fact as to the nature of the disease from which Wisch was suffering. Two rulings on evidence in connection with the fraud issue are attacked.

1. *Nondisclosure by Berner of the incontestability of the two older policies.* Berner's first interview with Wisch occurred May 27, 1959, at the hospital. This was in the course of defendant's investigation of Wisch's claim for waiver of premiums because of disability.

On June 12, 1959, after completing its evaluation of the investigation, defendant wrote to Retail Credit Company

requesting service with respect to making settlement. Defendant stated that the two newer policies were contestable and should be picked up and canceled. Defendant conceded that it had no legal basis on which to insist on cancellation of the two older policies, but stated that it was not liable on the waiver-of-premium provisions. It pointed out that because it would not waive premiums on the older policies, "Mr. Wisch may feel that it would be to his best interest to dispose of these policies," and authority was given to make settlement. Defendant authorized Retail Credit to pay $1,865.10, the amount of premiums paid, plus interest, on all four policies. In order to provide latitude in negotiation, Retail Credit was authorized to increase the total amount to $2,500 for all four policies.

Berner saw Wisch on June 23d, 24th, 25th, and 29th. Wisch was at home for the weekend between June 25th and 29th and on the 29th agreed to surrender all four policies for $2,500, the sum in excess of premiums paid, with interest, being allocated to the settlement of the two older policies. The releases signed by Wisch indicated with respect to the newer policies that the defendant claimed the right to cancel for fraud. The releases with respect to the older policies made no reference to a claim of right to cancel, but recited the defendant's claim that it was not liable under the provisions for waiver of premiums.

It is clear that defendant advised Berner that the two older policies were incontestable. Berner did not recall saying anything to Wisch about the two older policies being incontestable, but testified that Wisch told Berner that they were.

The testimony of Edward Johnson shows that Wisch did know they were incontestable. Johnson was formerly an agent for defendant, and sold Wisch his policies. When Wisch was at home on leave from the hospital, he asked

Johnson to come over to discuss his life insurance. They talked about the fact that the two older policies were incontestable. Plaintiff testified that she heard this.

The circuit court found that Berner did not make any material misstatement of fact or opinion; that Wisch had independent advice as to his rights; that he did not rely on any representations made by Berner. These findings are not against the great weight and clear preponderance of the evidence.

2. *Plaintiff's testimony as to statement by Wisch.* The court ruled that Mrs. Wisch was competent to testify concerning the conversation between Mr. Wisch and Johnson, which she overheard, but in which she did not participate. She testified that Wisch told Johnson that defendant sent Berner "to see him about the three policies that Johnson had sold him, and that they wanted him to surrender the three policies." Defendant's objection that this was hearsay was sustained, although the testimony was not stricken. Plaintiff claims that the testimony was admissible to show Wisch's state of mind, *i.e.,* that he was thinking of all three policies without distinguishing the contestable from the two incontestable ones, and that he did not understand he had a clear legal right to retain the older policies. We are unable, however, to ascribe this significance to the statement just quoted. The ruling of the court was correct.

3. *Testimony of Ludwig.* Robert Ludwig was a patient in the same ward as Wisch for three months and later came in daily for treatment. He was a life insurance salesman representing a different company, and Wisch questioned him about the insurance and about the waiver-of-premium provisions. Ludwig advised Wisch not to surrender his policies; Wisch would seem to agree and later seem to go back to his own way of thinking. Plaintiff offered to prove by Ludwig that Wisch said "that someone from Central Life wanted

him to surrender the policy, and that he was worried about it, and that he wouldn't get anything anyway, even if there was an incontestable clause in two of these policies." An objection was sustained. Plaintiff argues that the statement was admissible to show Wisch's state of mind.

Both Johnson and Mrs. Wisch were permitted to testify to a similar statement made by Wisch to Johnson. In response to Johnson's statement that the two older policies were incontestable and that nobody could take them away from him, Wisch "said if they could wiggle out of paying waiver of premium, that he felt if something should happen to him that Shirley would never get the insurance anyway; and that he would prefer to take the twenty-five hundred dollars and surrender the policy than to be sued for fraud."

Evidently Wisch was unwilling to rely on the clause which made the older policies incontestable, even though the two insurance men advised him to do so. There was, however, no evidence to show that his pessimism about the effectiveness of the incontestability clause stemmed from any statements made by Berner.

4. *Claim of mutual mistake.* Plaintiff asserts that both parties assumed that Wisch was suffering from rheumatoid arthritis, which involves a prolonged course, whereas in fact he was suffering from periarteritis nodosa, a disease almost always fatal within one year.

This point has some appeal because it seems that if both had considered it highly probable that Wisch would die within a year, Wisch would not have given up $15,000 for $2,000, and defendant would have been willing to pay more than $2,000 to avoid the policies. The circuit court, however, found that both parties were fully aware of the uncertainty of the nature of the ailment and elected to waive further inquiry. This finding is not against the great weight and clear preponderance of the evidence.

It was determined after Wisch's death that it was caused by periarteritis nodosa, with an interval of "years" between onset and death. A physician from the Veterans' Hospital testified that very little is known about periarteritis nodosa; that it is one of a group of diseases referred to as connective-tissue diseases; that rheumatoid disease has been considered part of the same group, but he had no knowledge of any closer connection between the two diseases; that he knew of one study of polyarteritis nodosa which showed a one-year death rate of practically all the patients in a nontreated group.

We are not told how much defendant knew about periarteritis nodosa, nor that Wisch was ever told the name of the disease. It is clear that defendant had been advised of at least the possibility that his disease was periarteritis nodosa, and that Wisch had been told the doctors were not sure about the nature of his ailment.

Defendant had a report from Retail Credit, dated March 12, 1959. It said, in part, "Present prospects are not known, but his wife states that a definite diagnosis has not been made. First a diagnosis of polyarthritis had been given at the veterans' hospital and, most recently, a diagnosis—tentative only—of rheumatoid arthritis was given. Prognosis guarded."

The hospital sent a report to defendant on April 24, 1959, stating the diagnosis was "Rheumatoid disease with arthritis."

A clinical record narrative summary was sent to defendant by the hospital on June 2d. It contained a reference to a "periarteritis nodosa-like picture" and said "A muscle biopsy was done to try to prove the diagnosis of periarteritis nodosa, but this was negative."

Berner reported that on May 27th, Wisch told him that,

". . . he had been photographed and his pictures sent to various other hospitals, and from appearance, it would seem

to be arthritis, but that there has now come a difference of opinions from various doctors that have examined him, and through correspondence of doctors with other locations, that this is not arthritis, but some other condition. He stated that in the past, they have just jumped to conclusion that he had arthritis, without doing any tests, biopsy, etc. but now at Woôd, they had given him the 'works' and there is a difference of opinion."

A statement signed by Wisch that day contained the following:

"Since 1950 the various doctors have thought I had arthritis but now they are not sure. Tests have been negative, including biopsy for arthritis, both bone and muscle. I am being curtailed of cortisone and should be off of it shortly. They will run observation or tests. Some doctors disagree that this is arthritis."

This court has said:

"Where a party enters into a contract, ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in the legal sense. These limitations are predicated upon common experience, that, if people contract under such circumstances, they usually intend to abide the resolution either way of the known uncertainty, and have insisted on and received consideration for taking that chance." [1]

*By the Court.*—Judgment affirmed.

---

[1] *Kowalke v. Milwaukee E. R. & L. Co.* (1899), 103 Wis. 472, 476, 79 N. W. 762. See *Bryan v. Noble* (1958), 5 Wis. (2d) 48, 52, 92 N. W. (2d) 226.