DEWEY RICHARD FARLEY and wife, )
PAMELA FARLEY, and )
TOMMY WEST, )
)
     Plaintiffs/Appellants, )
) Appeal No.
) 01-A-01-9510-CV-00429
VS. )
) Putnam Circuit
) No. J-5507 and J-5511
JAMES CLAYTON, Individually and )
d/b/a LUV HOMES, CLAYTON )
HOMES, INC., Individually and d/b/a )
LUV HOMES, and CH OF AL, INC., )
Individually and d/b/a LUV HOMES, )
)
     Defendants/Appellees. )

FILED

May 8, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF PUTNAM COUNTY
AT COOKEVILLE, TENNESSEE

THE HONORABLE JOHN TURNBULL, JUDGE


DAVID DAY
ROBERT DURHAM
19 South Jefferson Avenue
Cookeville, Tennessee 38501
    Attorneys for Plaintiffs/Appellants Dewey Richard Farley and Pamela Farley

MARTELIA T. CRAWFORD
310A East Broad Street
Cookeville, Tennessee 38501
    Attorney for Plaintiff/Appellant Tommy West

TOM CORTS
Third Floor, Noel Place
200 Fourth Avenue, North
Nashville, Tennessee 37219-8985
    Attorney for Defendants/Appellees


AFFIRMED AND REMANDED


BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# O P I N I O N

This is an action for misrepresentations and inducement of breach of contract relating to the trial and settlement of a personal injury case. The original plaintiffs and a co-defendant have sued the other defendants for misrepresenting or concealing material facts which (1) induced the plaintiffs to settle their original claim for less than its worth, and (2) induced the defendants' insurance company not to represent the other defendant. The Circuit Court of Putnam County granted summary judgment to the defendants. We affirm.

## I.

In the summer of 1990 an entity known as Luv Homes operated a mobile home sales lot in Cookeville. Tommy West managed the Cookeville operation. On August 27, 1990, Dewey R. Farley, who worked for a contractor hired by Luv Homes to deliver one of the trailers, was helping move the furniture out of the unit. Cheryl West, Tommy West's wife, was hauling the furniture in her El Camino which she owned jointly with Tommy West. Mr. Farley was standing in the bed of the vehicle holding some of the furniture upright when the truck lurched forward, throwing Mr. Farley out and onto the ground. He suffered severe and permanent injuries.

Mr. Farley and his wife sued Tommy and Cheryl West, Luv Homes, and the alleged owners of Luv Homes, including James Clayton individually. The insurance company providing coverage for Luv Homes and its associated entities, but did not provide coverage for Tommy West. Mr. West, after retaining his own private attorney, left town and broke off communication with his attorney and the other defendants. Consequently, the plaintiffs took a default judgment against him. After the trial started in November of 1991, the Luv Homes/Clayton defendants settled their

case with the Farleys for $125,000. The jury returned a verdict against the Wests for $620,000.

Mr. West resurfaced, and in 1993 he and the Farleys sued the Luv Homes/Clayton insurance carrier for failing to defend Mr. West in the original action. In September of 1994, all the parties to that action compromised their claims and the insurance carrier paid the Farleys $298,502.63 in return for their release of all claims against the insurance company. Tommy West released his claims against the insurance company and the Farleys released Tommy West from any further liability arising out of the 1990 accident.

On November 4, 1994 the Farleys and Mr. West in separate actions sued the Luv Homes/Clayton defendants, alleging that they misrepresented or suppressed facts during the earlier litigation that caused the Farleys to settle their case against the defendants for less that its worth and caused the defendants' insurance company to breach its obligation to defend Mr. West. The complaint specifically charged that the defendants negligently or intentionally (1) misrepresented or withheld the facts pertaining to Cheryl West's employment with the defendants, (2) misrepresented the facts concerning the lease of the El Camino by the defendants, (3) misrepresented facts concerning Cheryl West's intoxication at the time of the accident, and (4) misrepresented or suppressed the fact that Tommy West admitted he and Cheryl West were negligent in causing the accident.

The defendants answered each complaint. They did not plead res judicata but did plead the releases entered in the prior actions as affirmative defenses. Subsequently, the defendants moved for summary judgment and raised the additional defense of witness immunity. The plaintiffs joined issue on the defenses raised in the motion. The trial judge granted summary judgment to all defendants.

## II.

## Tommy West

We affirm the judgment in Tommy West's case because he had specific knowledge concerning the truth of all of the facts allegedly misrepresented or suppressed, and by obtaining a judgment to enforce the insurance contract, he has obtained all the relief to which he is entitled.

An essential requirement of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentations is detrimental reliance on a false premise. See *Shwab v. Walters*, 147 Tenn. 638, 251 S.W. 42 (1922); *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W.2d 780 (1970); *Williams v. Van Hersh*, 578 S.W.2d 373 (Tenn. App. 1978); *Dozier v. Hawthorne Development Co.*, 37 Tenn. App. 279, 262 S.W.2d 705 (1953). "Fraud involves deception and if one knows the truth, and is not deceived, he is not defrauded." *Freeman v. Citizens National Bank*, 167 Tenn. 399 at 409, 70 S.W.2d 25 at 29 (1934).

Mr. West was the agent of the Clayton defendants. He ran the operation in Cookeville and was the person through whom the Clayton defendants were charged with knowledge that Cheryl West was drunk, that she was an employee of Luv Homes, or that the El Camino was leased to the Clayton defendants. He was surely the best witness to the fact that he had admitted liability. Since Mr. West was not deceived by any of the defendants, he cannot sue them for fraud and deceit.

We are also convinced that he cannot now sue the other defendants for inducing the insurance company to deny coverage in the original action by the Farleys. The undisputed facts show that Mr. West joined the Farleys in an action to enforce the insurance contract. That action ended in an agreed judgment for the Farleys and a complete release of any liability on the part of Mr. West.

Although a party to a contract may successfully prosecute an action to enforce it and still maintain an action against third parties for inducing the breach, the law permits only one recovery, and any payments made by the one who breached the contract must be credited to the one who induced the breach. *TSC Industries, Inc. v. Tomlin*, 743 S.W.2d 169 (Tenn. App. 1987). In this case, Mr. West does not allege how he has suffered any damages beyond the judgment awarded to the Farleys in the original action. That judgment has now been completely discharged and Mr. West has obtained a release from all liability. Therefore, the undisputed facts show that an essential element of his cause of action is missing from this case. See *Hart v. First National Bank of Memphis*, 690 S.W.2d 536 (Tenn. App. 1985).

## III.
## The Farleys

The Farleys allege that because the Clayton defendants misrepresented or suppressed certain material facts in the original litigation, they (the Farleys) were induced to settle their claims for far less than their actual worth. The defendants rely on the release signed by the Farleys in the original action and argue in the alternative that any separate cause of action was barred by the witness immunity doctrine.

### a. The Release

In addition to language releasing the Clayton defendants from all liability arising out of the accident on August 27, 1990, the release contained the following:

> Releasors elect to and do assume all risks for claims heretofore or hereafter arising, known or unknown, asserted against Releasees in the above-described

> litigation and Releasors expressly include within the scope of this Release all such claims.
>
> Releasors warrant that no promise or inducement has been offered or made except as herein set forth; that this Release is executed without reliance on any statement or representation by Releasees or by any agents or representatives of Releasees, and Releasors hereby acknowledge and assume all risk, chance, or hazard that their injuries or damages may be or become permanent, progressive, greater, or more extensive than is now known or anticipated.

The only reference to the release in the Farleys' initial brief is a statement that the release is "ineffective in the face of misrepresentation." We take that as a statement of the familiar rule that a release may be set aside if it was procured by fraudulent misrepresentations. *Brundige v. Railroad*, 112 Tenn. 526, 81 S.W. 1248 (1903); *Crigger v. Mutual Benefit Health & Accident Association*, 17 Tenn. App. 636, 69 S.W.2d 907 (1933). The misrepresentations must relate to material facts, *Chattanooga Ry & Light Co. V. Glaze*, 146 Tenn. 49, 239 S.W. 394 (1921), and reliance on the misrepresentations must be justified. *Evans v. Tillett Bros. Const. Co., Inc.*, 545 S.W.2d 8 (Tenn. App. 1976).

In this case the alleged misrepresentations relate to the very issues that were being tried in the original action. We think, as a matter of law, that a release executed under such circumstances cannot be set aside for fraud. Parties to a lawsuit cannot justifiably rely on the representations of the adverse parties when success on the merits requires proof that the representations were false. For the same reasons that a judgment may not be set aside because of the "falsity of the internal evidence on which it was procured," see *Thomas v. Dockery*, 33 Tenn. App. 695 at 703, 232 S.W.2d 594 at 598 (1950), a release procured by that same internal evidence should also be immune from an attack based on fraud.

**b. The Separate Action for Fraud and Deceit**

The Farleys maintain that the release has nothing to do with their cause of action for fraud and deceit; that they have alleged a separate and distinct cause of action. But, even if we view the matter in that light, the same considerations dictate that the cause of action does not exist. As a matter of law one party to a lawsuit represented by counsel, cannot justifiably rely on the internal evidence presented by the opposite parties.

### c. Witness Immunity

What we have previously said in this section of the opinion is, perhaps, just another way of stating the witness immunity doctrine. As we stated in *Buckner v. Carlton*, 623 S.W.2d 102 at 108 (1981):

> The general rule is that testimony given in a judicial proceeding, if pertinent thereto, is protected by an absolute privilege even though given maliciously and with knowledge of its falsity. And accordingly, it is also the general rule that no civil action for damages lies for false testimony or for subornation of false testimony or for conspiracy to give or procure false testimony.

See 31 A.L.R. 3d, *False Testimony-Civil Conspiracy*, § 1423 at § 2.

The Farleys argue, however, that the defendants' representations were either a part of a larger conspiracy or were made prior to the original action. As to the larger conspiracy theory, we think this case is just like *Buckner v. Carlton* where the plaintiff alleged that the defendant was out to "get" him and maliciously damage his reputation in the community. Nevertheless, we held that the defendant "committed no overt acts separate and apart from the false testimony, the false statements to investigators and the conspiratorial conversations . . . ." 623 S.W.2d at 108. In this case all of the allegations of misconduct relate to the defendants' alleged purpose to defeat the Farleys' claims. Thus, the facts alleged do not bring this case within the larger conspiracy exception to witness immunity.

As to the assertion that at least some of the false statements made by the defendants were prior to the original action, we think that all of the statements come within the privilege. If they were not made in connection with the litigation over the Farleys' claims, they would be irrelevant. Otherwise, they come within the privilege.

The judgment of the trial court is affirmed and the cause is remanded to the Circuit Court of Putnam County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, JUDGE

CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE