## IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

| | | |
|---|---|---|
| **O. W. WINSETT,** | ) | |
| | ) | |
| Plaintiff, Counter-Defendant, | ) | Shelby Equity No. 96775 |
| and Appellee, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | Appeal No. 02A01-9605-CH-00108 |
| **PAUL ORR and MARY ORR,** | ) | |
| | ) | |
| Defendants, Counter-Plaintiffs, | ) | |
| and Appellants. | ) | |

FILED

November 14, 1997

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

APPEAL FROM THE CHANCERY COURT OF SHELBY COUNTY
AT MEMPHIS, TENNESSEE

THE HONORABLE FLOYD PEETE, CHANCELLOR

For the Plaintiff/Appellee:

Douglas Hartley
Mike H. White
Cordova, Tennessee

For the Defendant/Appellant:

W. Mark Ward
Memphis, Tennessee

**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This case involves the alleged breach of an oral contract for the construction of a home. The trial court granted the builder summary judgment. Because some genuine issues of material fact exist, we affirm in part, reverse in part, and remand.

In June of 1988, Appellee O. W. Winsett ("Winsett") and Appellants Paul and Mary Orr ("the Orrs") entered an oral agreement regarding Lot 127 in Woodchase Subdivision in Cordova, Shelby County, Tennessee. Winsett sold the lot to the Orrs for $48,500 and agreed to supervise construction of a home on the lot for a flat fee of $25,000. The Orrs selected the plans for the house, and Winsett prepared a construction estimate of $218,765, which included the cost of the lot. Winsett was to supervise the construction, and the Orrs were to be responsible for the payment of all labor and materials. Under the oral agreement, the Orrs could acquire materials from Winsett's suppliers and charge the cost to Winsett's accounts, which they would then repay to Winsett. The parties' understanding was that the Orrs were to pay weekly labor and material bills every Friday and pay monthly labor and material bills on the 10th of every month.

Some aspects of the oral agreement are disputed. The Orrs assert that they were to pay the first $15,000 of the builder's fee in weekly installments and pay the $10,000 balance upon completion of the house. Winsett claims that the entire fee was to be paid in weekly installments, regardless of the date of completion of the house. In addition, the Orrs contend that they were to pay subcontractors and suppliers at Winsett's cost. Winsett maintains that he told the Orrs they would pay his invoice amounts, which did not reflect a 2% discount he received for paying the invoices on time.

Both parties understood that the Orrs would be responsible for any cost overruns due to changes they might request in the plans or specifications. There is no dispute that the Orrs made several changes, such as requesting a higher quality of brick and mortar, more expensive bathroom fixtures, and an increase in the square footage. There is some dispute, though, as to the date on which the Orrs requested the increase in the square footage.

During the course of construction, the Orrs found several instances in which they were overcharged for supplies or labor. In most, Winsett corrected the problem to the Orrs' satisfaction. For example, on one occasion, lumber was taken off the worksite for use in another house under

construction by Winsett. Most, if not all, of this lumber, however, was later replaced at no extra cost to the Orrs.

Eventually, the costs of construction exceeded the Orrs' construction loan. The Orrs moved into the house in mid-December, 1988, and, without Winsett's knowledge, recorded a Notice of Completion on December 29. After the Orrs made their regular weekly payment on December 30, 1988, they made no more payments for labor or materials. They also refused to pay the $8,000 balance of the builder's fee. The Orrs stated that they refused to make further payments because 95% of a punch list of problems with the house had not been corrected and because they contested the validity of the amounts owed the various subcontractors and suppliers. They were also concerned that the costs of construction had far exceeded the original estimate. The house ended up costing the Orrs over $262,500. The Orrs' affidavits included a 1994 appraisal estimating the market value of the house at $245,000.

Winsett subsequently filed the instant action, seeking the balance owed him on his builder's fee and the amounts owed his various suppliers and subcontractors for material and labor. The Orrs filed a counter-complaint, alleging breach of contract, negligence, deceit, intentional misrepresentation and fraud. Winsett filed a motion for summary judgment.

The trial court granted Winsett summary judgment and dismissed the counter-complaint. In its order, the trial court found that the Orrs had been actively involved in monitoring the work on the house as it progressed and were responsible for the cost overruns because of the changes they requested during construction. The trial court also found that, whenever the Orrs found mistakes in invoices, Winsett corrected the errors by giving the Orrs refunds or credits, and that therefore an accord and satisfaction had been reached. The trial court found that Winsett stopped construction because the Orrs had refused to pay for the construction costs. It concluded that the estimate Winsett had provided of projected construction costs had not been a guarantee, that there had been no fiduciary relationship between the parties, and that the Orrs had failed to present any genuine dispute regarding the monies owed to Winsett. The trial court granted Winsett's summary judgment motion

2

and awarded him $29,121.89 in damages, comprised of the outstanding bills for materials and labor plus the $8,000 builder's fee.[1] From this decision the Orrs now appeal.

On appeal, the Orrs contend that genuine issues of material fact exist which should have foreclosed summary judgment. A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210-11. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Id.* Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *Id.*

Even though the contract at issue in this case is oral, the parties agree regarding most of its material terms. Both parties agree that the building fee was to be $25,000 and that the Orrs were to pay all costs associated with supplies and labor. Both parties agree that certain invoices were to be paid each Friday and others were to be paid on the 10th of every month.

On a number of issues raised by the Orrs, the trial court properly concluded that there was no genuine issue of material fact. For example, the Orrs paid Winsett $2,344.42 for workers' compensation premiums, and dispute this item because Winsett did not offer proof that these funds were actually paid for such premiums. The trial court properly held that the Orrs had the obligation to present proof of Winsett's failure to pay, in order to create a genuine issue of material fact. In another instance, the Orrs contended that, in reaching the agreement with Winsett for the amount paid for the lot, Winsett represented that the agreed amount was the amount he had invested in the property. The Orrs assert that they later determined that Winsett did not have title to the property at the time of his representation. However, it is undisputed that the Orrs paid only the amount to

---

[1]In response to the Orrs' Rule 59.04 and 52.02 motions, the trial court corrected a mathematical error and altered the original award from $29,917.63 to $29,121.89.

3

which they had agreed, so any alleged misrepresentation by Winsett on this issue is not material.

The Orrs claim that there is a disputed issue of material fact as to the parties' agreement on the payment schedule. The Orrs assert that they were to pay weekly installments with a $10,000 balance withheld until completion of the house. Winsett contends that the entire fee was to be paid in weekly installments, regardless of the date of completion. The Orrs contend that this disputed fact relates to which party breached the contract at the time the Orrs discontinued payment and Winsett failed to complete the "punch list." The Orrs fail to demonstrate how this issue affects the damages owed by the Orrs, since it is undisputed that the house was substantially complete when the Orrs moved into it in December 1988.

It is undisputed that the Orrs requested changes in the house plan and that these requested changes increased the cost of the house. The Orrs' changes increased the size of the kitchen, the fourth bedroom, the upstairs bar area, the living room, and the master bedroom and bath, and also changed the square footage price charged by the subcontractors. The Orrs knew these modifications would affect the total cost of construction. In his affidavit, Mr. Orr averred that when Winsett redrew the bottom floor plans, Winsett made a mistake in the square footage which resulted in the pouring of a larger slab than was originally intended by the Orrs. This was not discovered until the time came to measure for flooring, and the Orrs discovered that the living room was larger than the plans showed. The record appears to indicate a dispute as to whether, at the time Winsett gave the Orrs his estimate of the cost, prior to the closing, he knew of additional square footage which would have increased the cost of construction. Winsett stated in his affidavit that the Orrs made major changes in the plans after the estimate was prepared, including more expensive fixtures and a substantial increase in the size of the home. The Orrs argue that Winsett knew of the increased square footage prior to giving the estimate, and that this indicates fraud and deceit. In her affidavit, Mrs. Orr stated that she would not attend the closing until she received the estimate on the redrawn plans. She did not state, however, how she relied on the accuracy of the estimate, for example, whether she would not have gone through with the closing had the estimate included the cost of the additional square footage.

4

In addition, the trial court ruled as a matter of law that Winsett's estimate was, in fact, an estimate and not a guarantee. The record bears out the trial court's conclusion on this issue. Therefore, Even if Winsett was aware of the increased square footage prior to the estimate, the Orrs have failed to indicate reliance on his omission, for example, by alleging that, had they known of the increase in cost, they would not have entered into the agreement with Winsett. Reliance on a fraudulent statement or omission is an essential element of the claim. *Farley V. Clayton*, 928 S.W.2d 931, 933 (Tenn. App. 1996) ("An essential requirement of any action for fraud, deceit, failure to disclose or negligent or innocent misrepresentation is detrimental reliance on a false premise.") Since the Orrs fail to show this essential element, they have failed to show that this is a genuine issue of disputed material fact.

The Orrs also allege that they are skeptical of Winsett's construction charges, enumerating instances in which they brought overcharges to Winsett's attention and point to an affidavit by Mrs. Orr that a subcontractor had informed her generally that Winsett had cheated them and had a history of doing so.[2] The trial court properly held that this evidence does not create a disputed issue of material fact unless the Orrs can produce some evidence of instances in which Winsett allegedly cheated them which remain uncorrected.

However, the record indicates a few items on which the parties remain in dispute. The Orrs argue that, according to the oral agreement between the parties, the Orrs were to pay only Winsett's cost on all materials used for the house. Several suppliers gave Winsett a 2% discount on the invoice price when Winsett paid his bill on time, crediting Winsett's account with the discount amount. According to the Orrs, they should have received the benefit of this discount as it effectively lowered the cost of their materials. Winsett contends that the agreement between the parties was that the Orrs were to pay the invoice cost, not the cost after his discount, and that therefore he was justified in keeping the discount as extra profit. The resolution of this issue impacts whether the Orrs paid more than the amount for which they were contractually bound on previously paid materials bills. Moreover, because the agreement between the parties was oral, the resolution of this issue may turn

---

[2] We need not reach the issue of whether Mrs. Orr's affidavit on the statements of the subcontractor contains inadmissible hearsay.

on a determination of the credibility of the witnesses. Findings of credibility are for the trier of fact and cannot be made in the context of a motion for summary judgment. *Byrd*, 847 S.W.2d at 216.

Other disputed facts remain. The trial court found that Winsett corrected invoice errors when the Orrs brought them to his attention, and indeed in most instances he did. The Orrs contend, however, that at least two errors on the outstanding bills have yet to be corrected. The Orrs claim that a bill for plumbing materials includes a charge for a bathtub faucet which they never received. They also claim they were charged for the preparation of a flower bed and associated soil amendments, which were not requested and were not done. The bills listing these charges apparently remain unpaid. The Orrs claim they did not pay their final bills because of doubts as to their accuracy. Winsett does not appear to specifically dispute the Orrs' claims as to these two charges, but does dispute their general charge of inaccuracies. The record does not indicate that these two charges were subtracted from the overall amount Winsett claims is owed by the Orrs.

The dollar amount of these disputed items is likely not great. However, they are instances which remain uncorrected in which the Orrs maintain that Winsett allegedly cheated them. In resolving credibility issues and whether these charges were instances of fraud, the Orrs' evidence of a pattern of overcharging by Winsett becomes relevant. Therefore, a few genuine issues of disputed material fact remain, and summary judgment is inappropriate as to these issues.

In sum, as to the majority of the issues in this case, the trial court's grant of summary judgment was proper. As to a few issues, however, genuine issues of disputed material fact remain. We affirm a partial grant of summary judgment, but the remaining issues, as outlined above, must be resolved by the trier of fact.

The decision of the trial court is affirmed in part and reversed in part, and remanded for further proceedings consistent with this Opinion. Costs are assessed equally against Appellants and Appellee, for which execution may issue if necessary.

_____
**HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

6