IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 31, 2001 Session

## J. ELIZABETH MOXHAM v. ERIC W. CRAFTON, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 97-3525-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2000-00803-COA-R3-CV - Filed May 4, 2001**

---

During the trial of a construction dispute, the parties reached a settlement in the hallway of the courthouse, and subsequently announced the terms of their agreement to the trial court. Before the agreed order was entered, however, the plaintiff attempted to withdraw her consent. The plaintiff argues on appeal that the trial court erred by signing and entering the agreed order, and by denying her motion to set it aside. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Dana C. McLendon, III, Franklin, Tennessee, for the appellant, J. Elizabeth Moxham.

Thomas V. White and Jude A. White, Nashville, Tennessee, for the appellees, Eric W. Crafton, Individually, and C & C Development and Construction Co., Inc.

**OPINION**

**I.**
**A CONSTRUCTION DISPUTE**

On October 23, 1996, C & C Development and Construction Company (C & C) entered into a contract with Elizabeth Moxham to build her a house "of good quality and free of defects," on a 5.5 acre tract she owned in Bellevue. Ms. Moxham agreed to make periodic payments as the work progressed, totaling $69,874 upon completion. She also agreed to convey 0.4 acres of her tract to the contractor, which would enable him to shorten the length of a sewer line to an adjoining subdivision that he was building, and possibly to add another residence to it. Another provision in the contract allowed either party to terminate it by written notice.

Construction on the house began, but things did not go smoothly. Ms. Moxham was dissatisfied with the quality of the work, and refused to make two progress payments requested by Mr. Crafton, even though the bank that made the construction loan to her had authorized the payments after inspection by their agents. On July 15, 1997, Eric Crafton sent a letter to Ms. Moxham, terminating the contract and demanding proportional payment for the work completed, as well as Ms. Moxham's signature on a deed transferring the 0.4 acre tract to him.

On October 27, 1997, Ms. Moxham filed suit against C & C and against Eric Crafton, C & C's president, for breach of contract, negligent construction, and breach of the builder's warranty. She alleged that an inspection of the uncompleted house conducted by the Metropolitan Codes Department had revealed numerous construction defects. Ms. Moxham asked for damages, as well as for injunctive relief in the form of an order to complete the project, including compliance with the repairs listed by Codes or, in the alternative, to cancel the defendants' building permit.

On November 4, 1997, Wayne Crafton, Vice President of C & C and Eric Crafton's father, filed a mechanics' and materialmen's lien on Ms. Moxham's property, and a complaint to enforce it. He claimed that C & C had not been paid for its work, and demanded payment in full on the contract, or in the alternative that the property be sold to enforce the lien.

The two lawsuits were subsequently consolidated by agreed order. The order also stated that C & C would cause the building permit for the project to be cancelled and withdrawn, and that Ms. Moxham would be allowed to amend her complaint to add Wayne Crafton as a party defendant. Sometime after the building permit was cancelled, Ms. Moxham hired another contractor to finish the house, and to repair defects in Mr. Crafton's work. When this was completed, she moved into the house.

The defendants filed a motion to amend their complaint on August 2, 1999. Their amended complaint reduced the amount of the mechanics' and materialmen's lien from $69,874 to $10,000, but added a claim for $20,900 in consequential damages, allegedly resulting from Ms. Moxham's failure to convey the 0.4 acres to them.

## II.
### A TRIAL AND A SETTLEMENT

The trial of the case began on December 13, 1999. Ms. Moxham testified all morning and part of the afternoon. Three Codes inspectors and two contractors were also called to the stand. The defendants objected to some of the evidence the plaintiff tried to present through the testimony of the contractors, because she had not complied with the local rule that requires each party to provide opposing counsel with certain information about the evidence it intends to present at least 72 hours in advance of the trial. For her part, the plaintiff argued that the defendants had failed to make proper requests for discovery under Rule 26, Tenn. R. Civ. P. The judge rebuked both parties for failing to follow the discovery rules, and adjourned the court at 4:10 p.m. He stated that he would put the case back on the docket only after the parties had complied with the discovery rules.

At that point, the parties met in the courthouse hallway and negotiated a settlement. The court reporter had already gone home, but the judge was called back to the bench, where the parties announced their settlement, which he approved. In general terms, the settlement called for both sides to abandon all claims for money damages against each other, and for Ms. Moxham to convey the 0.4 acres to the defendant, with the parties to use their best efforts to complete the terms of the agreement by January 1, 2000.

On December 15, 1999, defendants' counsel submitted to the court a draft of an agreed order, signed by counsel for both parties, which recited the terms of the agreement that had been announced in open court. However, the agreed order was not signed by the chancellor until January 12, 2000, a fact upon which the plaintiff places great emphasis.

On January 6, 2000, the defendants filed a motion for contempt against Ms. Moxham for failing to convey the 0.4 acre tract in accordance with the agreement. In the interim, Ms. Moxham's attorney had withdrawn from representing her, so on January 10, 2000, Ms. Moxham filed a pro se motion, captioned "Motion to Set Aside Agreed Order, and Reset the Case for Trial." She claimed that the settlement reached on December 13 was the product of "extreme duress" resulting from strong pressure by her attorney to settle, and emotional upset from four hours of questioning on the stand.

The Clerk and Master conducted a hearing on the motion for contempt on February 4, 2000. Ms. Moxham appeared pro se. The evidence showed that in order to convey the tract to C & C, she would have to replace her construction loan, secured by the entire 5.5 acre tract, with a mortgage loan secured by the property remaining after the conveyance. She testified that she had contacted two banks about the loan, and both were prepared to make the mortgage loan, but she chose not to do business with the first bank, and didn't follow through with the second bank because of an $800 fee for a title policy. The trial court found Ms. Moxham to be in contempt, and ordered her to convey the 0.4 acre tract to the defendants by February 25.

Ms. Moxham subsequently made the conveyance. A hearing before the Clerk and Master on March 3 resulted in a finding that she had purged herself of the contempt. The only contempt sanction the court imposed upon her was an order to reimburse the defendants for attorney fees and costs they incurred in the contempt action, in the amount of $1,025.

Ms. Moxham meanwhile had engaged another attorney, and he filed a document captioned as "Plaintiff's Supplemental Pleading with Respect to Plaintiff's Motion to Set Aside." The pleading stated that it was offered pursuant to Rule 60.02(2), Tenn. R. Civ. P., which allows a trial court to set aside a final judgment by reason of fraud or misconduct by an adverse party. Ms. Moxham's attorney claimed that Mr. Crafton had induced Ms. Moxham to settle the case on highly unfavorable terms, by deliberately overstating the amount of consequential damages he suffered as a result of Ms. Moxham's failure to convey the 0.4 acre tract to him in a timely manner. The Chancellor heard the arguments on the motion on March 3, 2000, after which he declined to set aside the agreed order. This appeal followed.

## III.
### JURISDICTION

The appellees attempt to dispose of this appeal at the outset by arguing that the appellant did not file a timely Notice of Appeal, and thus that this court does not have jurisdiction over the case. They contend that the order appealed from was the court's agreed order entered on January 12, 2000, and they observe that the Notice of Appeal was not filed until March 31, 2000, more than 30 days later.

Rule 4(a) of the Rules of Appellate Procedure requires the filing of a Notice of Appeal within 30 days of the order appealed from. Rule 2 allows the appellate courts to suspend the requirements of any of the rules "for good cause," but explicitly prohibits them from extending the time for filing a Notice of Appeal under Rule 4. This time limit is mandatory and jurisdictional in civil cases. *John Barb, Inc. v. Underwriters at Lloyds of London,* 653 S.W.2d 422, 424 (Tenn. Ct. App.1983). Failure to file a timely Notice of Appeal deprives this court of jurisdiction. *Edmundson v. Pratt*, 945 S.W.2d 754 (Tenn. Ct. App. 1996). *Jefferson v. Pneumo Services Corp.*, 699 S.W.2d 181 (Tenn. Ct. App. 1985)

However, Section (b) of Rule 4 allows the filing of certain motions within 30 days of the judgment to extend the time for filing the Notice of Appeal until 30 days after the order disposing of such a motion is entered. Motions applicable under this rule include a Motion for New Trial, and a Motion to Alter or Amend the Judgment under Rule 59, Tenn. R. Civ. P.

Appellees argue that appellant's original pro se "Motion to Set Aside Agreed Order, and Reset the Case for Trial" is not one of the motions contemplated by Rule 4. However, there are numerous cases which require us to construe post-trial motions in accordance with their substance rather than their form. *Starks v. Browning*, 20 S.W.3d 645 (Tenn. Ct. App. 1999). *Tennessee Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453 (Tenn. 1998); *Bemis Co., Inc. v. Hines*, 585 S.W.2d 574 (Tenn. 1979).

Ms. Moxham's motion, though inartfully drafted, had sufficient substance to merit its designation as a Motion to Alter or Amend Judgment under Rule 59.04. The fact that the judgment in this case was an agreed order should not matter; it was the final order of the court resolving all the claims of the parties. The trial court did not rule on the motion until March 3, 2000. Thus, the filing of the Notice of Appeal on March 31, 2000 was timely, and this court may hear her appeal.

## IV.
### CONSENT AND WITHDRAWAL

The appellant argues in her brief that the trial court should not have entered the agreed order, as she withdrew her consent prior to its entry. She relies on the case of *Harbour v. Brown for Ulrich*, 732 S.W.2d 598 (Tenn. 1987), in which the Supreme Court reversed a judgment based on a

compromise agreement, because the trial court was aware that prior to the entry of any order in the case, the defendant had withdrawn his consent to the compromise. The Court stated in that case,

> "[T]he resolution of disputes by agreement of the parties is to be encouraged. But a valid consent judgment can not be entered by a court when one party withdraws his consent and this fact is communicated to the court prior to entry of the judgment.

732 S.W.2d at 599.

Appellees note, however, that the case of *REM Enterprises v. Frye*, 937 S.W.2d 920 (Tenn. Ct. App. 1996), carved out an exception to the seemingly absolute rule quoted above. The defendant in *Frye* also attempted to withdraw his consent to a settlement agreement before the agreement was entered. Although the defendant relied upon the language of *Harbour*, this court was able to distinguish between the circumstances of the two cases, and we ruled that the settlement agreement was binding on the parties.

We noted that the parties in *Harbour* had announced to the court that they had reached a settlement, but that the terms of the settlement had not been read in court or made a part of the technical record. In the *Frye* case, the terms of the agreement were read in open court to the Chancellor, and he personally asked each of the parties if they consented to the settlement. We held that this was a sufficient predicate for the subsequent entry of a binding order. The general rule as to the requirements for entry of a consent judgment, is set out in 49 C.J.S. *Judgments* § 174(b) and is quoted in both *Harbour* and *Frye:*

> The power of the court to render a judgment by consent is dependent on the existence of the consent of the parties at the time the agreement receives the sanction of the court or is rendered and promulgated as a judgment.

The disjunctive "or" in the above quote indicates that while simultaneous agreement by the parties and the court is a necessary prerequisite for a valid agreed order, that agreement may adequately manifest itself when the parties are before the court, even if a valid judgment has not yet been entered. The appellee contends that the agreement in the present case received the sanction of the court when the chancellor was called back to the bench, heard the terms of the agreement, ascertained the parties' consent by questioning them, and announced his approval.

While this appeal was pending, an opinion by this court was published which presented yet another variation on the theme of withdrawal of consent to an agreement prior to entry of an agreed order, and which discussed the holdings of both *Harbour* and *Frye*. It does not appear to us, however, that our opinion in that case, *Environmental Abatement, Inc. v. Astrum R.E. Corp.*, 27 S.W.3d 530 (Tenn. Ct. App. 2000), changes our central holding in *REM Enterprises v. Frye* that a trial court may, under the proper circumstances, enter an agreed order after one of the parties has changed her mind.

The result in the *Environmental Abatement* case was largely determined by the operation of Rule 31 of the Rules of the Supreme Court, which creates a framework for court-sanctioned alternate dispute resolution. Rule 31 is not involved in the present case, but both parties argue that our holdings in *Environmental Abatement* support their respective positions. It would therefore be helpful for us to briefly discuss that case.

Three parties were involved in litigation arising from a construction project. The trial judge ordered all three to submit their dispute to a settlement conference conducted by another judge under Rule 31. No court reporter was present at the conference, but the parties reached a verbal agreement, which was restated by the settlement judge and confirmed by the parties, and he ordered the counsel for the one of the parties to prepare the consent decree.

The following day, Mahan Roofing Company notified the other parties that it was withdrawing its consent to the agreement. The proposed consent decree was submitted to the settlement judge together with Mahan's letter indicating its withdrawal of consent. The settlement judge subsequently entered the Order of Compromise and Settlement that had been submitted to him, although he was aware of the withdrawal of consent. Two of the parties signed the order, but Mahan did not.

Mahan subsequently filed a motion to set aside the decree, arguing both that it had withdrawn its consent, and that the terms of the settlement were not accurately reflected in the order. The trial judge denied the motion. Mahan renewed the motion before the settlement judge, and it was again denied. Mahan then appealed to this court.

On appeal, this court vacated the Order of Compromise and Settlement. We noted at the outset the exception to *Harbour*'s often-quoted general rule, and stated that when applicable, that exception,

> "would allow the entry of a consent order of compromise and settlement which merely documents an earlier agreement even where consent does not exist at the time of entry of the written order. Stated differently, there are situations where a party will not be allowed to withdraw its consent to an oral agreement prior to entry of a judgment based on that agreement. At the least, this exception applies to agreements made in open court, on the record, where the detailed terms of the agreement are presented to the court, accepted by the court, and preserved by transcript or other acceptable record of the court proceedings."

27 S.W.3d at 538-539.

We found that Mahan was entitled to withdraw its assent to the oral agreement prior to the entry of the order by the trial judge, because that agreement was neither taken in open court nor adequately preserved on the record.

Under Rule 31, a trial judge may issue an order of reference to compel the parties to participate in some form of alternate dispute resolution. All such proceedings are conducted by a "dispute resolution neutral" who may be a judge, but need not be. Thus, a judge who acts as a mediator in a judicial settlement conference is, for purposes of that conference, not a judge, but a dispute resolution neutral, and proceedings before that neutral do not take place in open court.

As we said in *Environmental Abatement*,

"[a] dispute resolution neutral, including a judge acting in that capacity, has no authority to dispose of a case or to enter an order disposing of a case. The neutral's powers include only the filing of a report indicating whether the case was completely settled or partially settled. Tenn. R. Sup. Ct. 31 § 8.

27 S.W.3d at 540.

We went on to find that the settlement judge exceeded his powers as a dispute resolution neutral by entering an Order of Compromise and Settlement to dispose of the case. The settlement conference was not conducted in open court or on the record since the settlement judge was not acting in his capacity as the <u>trial</u> judge. We note that a settlement agreement signed by all the parties may be enforceable like other contracts, but it does not become the judgment of the court until it receives the approval of the <u>trial</u> judge.

Since Mahan did not sign the settlement agreement the purported agreement did not have the consent of the parties at the time it received the sanction of the trial court. Further, the lack of a transcript or recording of the parties' oral agreement would have made it impossible for the trial court to evaluate Mahan's claim that the written order did not accurately reflect the terms it agreed to prior to its withdrawal of consent.

In the present case, the settlement was announced in open court before the trial judge, where it received his sanction, and there is no claim that the written order deviated from the parties' actual agreement. The appellant concedes that if a court reporter had been present on the afternoon of December 13, 1999, when the chancellor gave his approval to the agreement the parties reached in the courthouse hallway, she could not have successfully challenged the entry of the agreed order.

The appellant contends, however, that since there is no transcript or recording of those proceedings before the chancellor, the actual agreement of the parties was not on the record, and thus did not meet the requirements quoted above from pages 538-539 of *Environmental Abatement*. It appears to us, however, that the purpose of transcribing a hearing during which a settlement is approved is to prove the terms of the agreement, and the parties' assent to those terms. Further, a close look at *Environmental Abatement* demonstrates a more expansive understanding of when proceedings may be considered to be "on the record" than the appellant suggests. *See* 27 S.W.3d at 541. We think that the agreed order, signed by both attorneys, provides sufficient documentation of the existence and terms of the agreement and the fact that it was made in open court. It is the

record of that appearance. It states, "The parties . . . appeared with counsel before the court . . . informed the court that they had reached a settlement . . . . On December 13, 1999, plaintiff J. Elizabeth Moxham and Eric Crafton, on behalf of the defendants, confirmed to the court that they agreed to the above referenced settlement terms." Thus the order, submitted two days after the appearance and signed by both counsel, documents that there was agreement of the parties "at the time the agreement received the sanction of the court."

Where there can be no dispute that agreement as to the terms existed at the time the agreement was accepted or approved by the court (which has the authority to dispose of the case), there is no basis for preventing entry of the order simply because a party changed his or her mind before the order was actually entered. A party seeking to set aside an agreed order at that point would have to rely on Rule 59, 60, Tenn. R. Civ. P., or other authority. Neither *Harbour* nor *Environmental Abatement* allows them to avoid the consequences of an agreement announced in open court and approved by the trial judge.

## V.
### THE RULE 60 MOTION

As we stated above, the appellant's attorney filed what he called a Supplemental Pleading after the agreed order was entered, seeking to set aside the order under Rule 60.02 of the Rules of Civil Procedure. Relief under Rule 60.02 is considered "an exceptional remedy. *Nails v. Aetna Insurance Co.*, 834 S.W.2d 289, 294 (Tenn. 1992). The function of the rule is "to strike a proper balance between the competing principles of finality and justice." *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn. 1976). The grant or denial of a Rule 60.02 motion is within the sound discretion of the trial court, and the scope of review on appeal is whether the trial judge abused that discretion. *Toney v. Mueller Co.*, 810 S.W.2d 145 (Tenn. 1991).

Rule 60.02(2) allows a court to relieve a party of a final judgment for reasons of fraud or misrepresentation. The gist of the appellant's claim is that the defendants misrepresented their damage claim, thus improperly influencing her to settle the case. Her pleading was accompanied by the affidavit of a licensed engineer, who had reviewed preliminary plans for the sewer lines to Mr. Crafton's subdivision, and stated his opinion that the proposed sewer line across the .4 acre section of Ms. Moxham's property could not have served all the houses in the subdivision.

Appellees responded with the affidavit of the project engineer, who stated that if they had been able to use Ms. Moxham's property, they could have reduced the length of the necessary sewer line by 220 feet, and reduced its depth by eight feet. It thus appears that if the question of damages had gone to trial, both parties would have had some ammunition to support their arguments. But this falls very far from establishing any fraud or misrepresentation by the appellees.

Ms. Moxham knew well in advance of the settlement date that the defendants were seeking $20,000 in consequential damages. The appellant had every opportunity to evaluate this claim through the use of discovery. The fact that she apparently chose not to do so does not constitute

fraud on the part of the appellees. Even if a factual investigation undertaken after the judgment was entered had uncovered some deliberate misrepresentation on the part of the defendants, this would not necessarily entitle the appellant to relief from the judgment, if the failure to discover the misrepresentation before settlement was because of lack of diligence on her part. As a matter of law one party to a lawsuit represented by counsel cannot justifiably rely on the internal evidence presented by the opposite party. *Farley v. Clayton*, 928 S.W.2d 931 (Tenn. Ct. App. 1996). The chancellor acted within his discretion in denying the plaintiff's Rule 60 motion.

## VI.
### CONTEMPT

The appellant contends that if this court should vacate the agreed order, then the contempt order against Ms. Moxham should likewise be vacated as a matter of course, and that even if we affirm the agreed order (which we do) the contempt order should still be dissolved. She points out that contempt sanctions for failing to comply with a court's orders are only appropriate where the allegedly contemptuous act is willful or purposeful, and she denies that it was so in this case.

Ms. Moxham argues rather that it was a difficult conundrum for her as a layperson to obtain a loan, clear the lien imposed by the defendants, and convey a portion of her otherwise encumbered tract of land to the defendants, all within a few weeks. The proof showed, however, that she had ample opportunity to at least make substantial progress towards the desired result, but that she chose not to do so.

Ms. Moxham chose not to work with the two banks which, according to the testimony of their own officers, were capable of completing the transactions required by the agreed order. The Bank of Green Hills was willing to proceed with the conversion of her construction loan to a mortgage loan, but Ms. Moxham testified that she decided not to do business with them because she heard that a bank officer would be called as a hostile witness. She then contacted the National Bank of Commerce (NBC), which conditionally approved a mortgage for her, pending completion of a title policy on her property. Ms. Moxham learned, however, that there would be an $800 fee for completion of the title policy, and on January 24, 2000 (over three weeks after the deadline for conveying the property) she asked the bank to stop processing her application so she could check with other lenders.

It is clear that Ms. Moxham's non-compliance with the agreed order was the result of her own decision-making. In view of the requirement in the order that she make a good faith attempt to convey the property by January 1, 2000, the court appropriately found her delay to constitute contempt. As for the amount of the penalty ($1,025) it cannot be considered unreasonable or disproportionate, considering that Ms. Moxham's failure to convey the property in a timely way was the subject of several motions and orders, as well as two separate hearings, both requiring the attendance of the defendants' attorney and a court reporter.

As a final matter, the appellees insist that this appeal was frivolous, and they ask the court to order the appellant to pay the costs and expenses incurred responding to it, including attorney fees, pursuant to Tenn. Code. Ann. § 27-1-122. We believe, however, that the appellant raised an important point of law in this appeal, the resolution of which has not been an obvious or easy matter for this court to determine. We thus find that the appeal was not frivolous, and each party will be responsible for its own attorney fees.

## VII.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, J. Elizabeth Moxham.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.